IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN ANDERSON, )<br>)<br>)<br>  Plaintiff, )<br>      v. )<br>)<br>RICHARD PERHACS, in his individual and )<br>official capacity, )<br>)<br>  Defendant. )<br>)<br>) | C.A. No. 11-289 Erie<br>District Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Defendant Richard Perhacs' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. For the reasons which follow, Defendant's motion is granted.

I. BACKGROUND

Plaintiff Maryann Anderson ("Plaintiff"), a resident of Erie, Pennsylvania, is a former employee of the Millcreek Township School District ("MTSD") located in Millcreek Township, Pennsylvania. (Amended Complaint, Docket No. 9, ¶ 5). From September 1988 through September 2009, Plaintiff was employed in the MTSD as either the Director of Special Education or the Director of Personnel. (Amended Complaint, ¶¶ 16, 17). At all times relevant to the instant action, Defendant Richard Perhacs

1

("Defendant"), an attorney specializing in education law, served as the appointed Solicitor for the MTSD. (Amended Complaint, ¶ 11).

As alleged in the Amended Complaint, the facts underlying this action concern, in part, an investigation launched by the MTSD Board of School Directors ("Board") into a number of anonymous letters received by former Superintendent Maynard containing various accusations and threats related to Maynard's "personal lifestyle vis-à-vis his sexual preference." (Amended Complaint, ¶ 18). At the time that the letters were received, the MTSD Board was already aware of independent accusations of nepotistic hiring practices concerning Maynard. (Amended Complaint, ¶¶ 19-21). As a result, some members of the Board suspected that Maynard might have sent the anonymous letters to himself in order to divert attention away from the accusations of nepotism. (Amended Complaint, ¶¶ 19-20). At a board meeting conducted on March 12, 2007, the Board directed Defendant to investigate the anonymous letters and determine, if possible, their origin. (Amended Complaint, ¶ 22). According to Plaintiff, Defendant was authorized to run the investigation "as he saw fit" and was granted "final policymaking authority" with respect to the investigation. (Amended Complaint, ¶¶ 23, 161). However, Plaintiff alleges that Defendant "did not conduct an honest investigation and did not fully report his investigative findings" to the Board, but rather, "improperly aligned himself with Maynard to protect Maynard from discipline." (Amended Complaint, ¶¶ 29, 44).

Plaintiff's accusations of retaliatory conduct stem from a "whistleblower report" that she filed on March 16, 2007 in conjunction with the investigations into Maynard. On that date, Maynard contacted Plaintiff at home and requested that she turn over her

2

MTSD-issued laptop computer so that the Board could secure and examine it for evidence related to the anonymous letters. (Amended Complaint, ¶¶ 32-33). Plaintiff alleges that she was skeptical of Maynard's motives and believed that he was attempting to obtain her computer so that he could place incriminating evidence concerning the anonymous letters on her hard drive or otherwise improperly tamper with her computer. (Amended Complaint, ¶ 37). As a result, she contacted her own attorney and decided to meet with a partner of Defendant, Attorney Tim Sennett ("Sennett"), to explain her suspicions about Maynard and hand over her laptop for preservation. (Amended Complaint, ¶ 40-41). Plaintiff refers to the act of turning her computer over to Sennett and revealing her suspicions concerning Maynard as her "March 16, 2007 whistleblower report." (Amended Complaint, ¶ 154). Plaintiff also alleges that she made a whistleblower report on April 19, 2007 wherein she complained of "wasteful spending, lack of oversight in the use of MTSD credit cards and travel expenses, and Maynard hiring practices." (Amended Complaint, ¶¶ 99, 152).

Subsequent to her purported whistleblower reports, Plaintiff alleges that Defendant began to retaliate against her in various particulars. (Amended Complaint, ¶¶ 45-182). Specifically, she alleges, *inter alia*, that Defendant:

1. entered her office with Maynard on March 17, 2007, and took possession of various personal notes, cards and photographs belonging to Plaintiff (Amended Complaint, ¶ 45);

2. attempted to portray Plaintiff as an "adultress" and made various inquiries concerning her alleged affair with a colleague (Amended Complaint, ¶ 63);

3. ordered various actions, such as the collection of any emails exchanged between Plaintiff and her male colleagues, designed to make her look like a "serial adulterer" (Amended Complaint, ¶¶ 68-69);

4. provided a misleading and inaccurate exhibit to defense counsel in a related case filed by Plaintiff, see <u>Anderson v. Board of School Directors</u>, Civil Action 1:07-cv-111-SJM, which misrepresented the evidence "stolen from Plaintiff's office on March 17, 2007" (Amended Complaint, ¶ 74);

5. advised the Board not to grant Plaintiff an opportunity to articulate her claims that she was being harassed by a co-worker, Rebecca Mancini ("Mancini") (Amended Complaint, ¶ 91);

6. made false criminal accusations against Plaintiff's daughter (Amended Complaint, ¶ 107);

7. concealed evidence which would have supported her whistleblower claims and prevented Plaintiff from having access to the MTSD Board (Amended Complaint, ¶ 164); and

8. failed to inform the MTSD Board of his findings during the investigation (Amended Complaint, ¶164).

Plaintiff also generally alleges that Defendant "approved" of various other retaliatory acts by Maynard and Mancini. (Amended Complaint, ¶¶ 85-86, 90-91, 102).

Plaintiff filed her original complaint on November 11, 2011, asserting First Amendment Retaliation claims against Defendant in both his individual and official capacity pursuant to 42 U.S.C. § 1983 (Counts One and Two) and a claim pursuant to the Pennsylvania Whistleblower Act, 43 Pa. C.S. § 1422 *et seq*. (Count Three).

Defendant moved to dismiss on December 20, 2011, arguing that Plaintiff's allegations failed to establish that Defendant was a state actor and that each of Plaintiff's claims was barred by the applicable statute of limitations. (Docket No. 7). On January 23, 2012, Plaintiff filed a First Amended Complaint in which she asserted the same individual and official capacity[1] claims pursuant to § 1983 and the Pennsylvania Whistleblower Act, but supplemented her factual averments to allege that Defendant had prohibited her from filing her action prior to 2011 by concealing relevant evidence. (Amended Complaint, ¶¶ 48, 60-61, 65-66, 71, 83, 171-74, 180-81). Defendant responded by filing the instant Motion to Dismiss, again contending that Plaintiff had failed to adequately allege that he was a state actor and that both her federal and state claims were time-barred. Following briefing and an oral argument on July 9, 2012, this matter is ripe for review.

I.  STANDARD FOR REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a

---

[1] Plaintiff voluntarily withdrew her official capacity claim (Count 2) against Defendant at an oral hearing on the instant motion held on July 9, 2012.

complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Where a 12(b)(6) motion raises a challenge based upon the applicable statute of limitations, the Court must rely on the time alleged in the complaint to determine if the statute of limitations has expired. Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3rd Cir.1989). If the statute of limitations has expired, the claim is properly dismissed on a 12(b)(6) motion. See Cito, 892 F.2d at 25.

II. DISCUSSION

In order to prevail on a claim for relief pursuant to 28 U.S.C. § 1983, a successful plaintiff must allege and prove that the defendant violated a federal constitutional right and that the violation was committed by a person acting under color of state law. Angelico v. Lehigh Valley Hosp., 184 F.3d 268, 277 (3rd Cir. 1999) ("Angelico II"). A

person may be found to be acting under color of state law, or be considered a state actor, when "(1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982)).

It is well-settled that an attorney does not act under color of state law simply by virtue of representing a state actor as a client or by acting as solicitor on behalf of a municipality or public school board. Angelico II, 184 F.3d at 277; Spradlin v. Borough of Danville, 2005 WL 3320788, *3 (M.D. Pa. 2005); O'Hanlon v. City of Chester, 2002 WL 393122, *4 (E.D. Pa. 2002). Rather, the attorney or solicitor must in some manner be "clothed in the authority of state law" at the time of the alleged constitutional violation in order for § 1983 liability to attach. O'Hanlon, 2002 WL 393122, *4 (quoting Groman v. Township of Manalapan, 47 F.3d 628, 639 n. 17 (3rd Cir. 1995)). In determining whether an attorney is sufficiently clothed in the authority of the state with respect to a particular action, courts have primarily focused on one or both of the following inquiries: (1) whether the attorney has actually invoked the coercive force of the state to accomplish his or her client's goal, as opposed to merely implying or threatening state legal action; and (2) whether the attorney has gone beyond his or her traditional role as a provider of legal advice and begun to actually make official policy decisions that are ordinarily left to the state. See, e.g., Angelico II, 184 F.3d at 277; Belkowski v. Kruczek, 2010 WL 1433099, *3 (W.D. Pa. 2010). Each will be discussed in turn.

    A. Actual State Involvement

The Third Circuit extensively discussed the first of these inquiries - the distinction between *potential* state involvement and *actual* state involvement - in Angelico II. Under the facts of that case, the plaintiff, a physician, sued several attorneys claiming that they had violated his constitutionally protected property and liberty interests by using the subpoena process to gather information on him in the course of prior litigation. Id. at 276-77. The plaintiff argued that the use of the state subpoena process elevated the private attorney-defendants to the level of state actors. The district court rejected this argument:

> Although plaintiff notes that there are potential legal consequences attached to failure to obey a subpoena which might ultimately involve invoking the assistance of state officials, such possibility serves only to highlight the difference between resorting to an available state procedure and actually using state officials to enforce or carry out that procedure. The potential for involving the coercive power of the state likewise exists when a judgment by confession is entered, yet ... a private party is not converted into a state actor as long as the assistance of state officials remains merely a potential threat. It is only when, and if, such potential is realized that a private party may be converted into a state actor for purposes of satisfying the state action element of a § 1983 claim.

Angelico v. Lehigh Valley Hospital, Inc., 1996 WL 524112 (E.D. Pa. 1996) ("Angelico I"). On appeal, the Third Circuit affirmed, holding that "an attorney does not become a state actor simply by employing the state's subpoena laws." Id. at 278. Focusing its analysis on the "distinction between the potential for state involvement and actual state involvement," the Court explained that, "[b]efore private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation, e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request." Id. at 278 (quoting Jordan v. Fox, Rothschild,

8

O'Brien & Frankel, 20 F.3d 1250, 1264 (3rd Cir. 1994)). The Court concluded that the mere "potential threat" of state action inherent in the use of the subpoena process was insufficient to elevate a private attorney to the level of a state actor for purposes of § 1983. Id. See also Jordan, 20 F.3d at 1266-67 (holding that a private attorney did not function as a state actor while entering a judgment of confession against the plaintiff, but became a state actor when he executed on the judgment by ordering a sheriff to garnish property to satisfy the judgment).

Similarly, in O'Hanlon, a private attorney serving as solicitor to a local school district was retained by the district to investigate and pursue a course of action with regard to delinquent taxes on various properties. O'Hanlon, 2002 WL 393122, *1. The solicitor, Hackett, hired an investigator, Gosnell, who visited the properties, interviewed tenants, and instructed them to send their rent checks directly to the city taxing authority, rather than to their landlords, depriving the landlords of their right to receive rent and causing several tenants to move out. Id. After the landowners filed suit, the solicitor moved for summary judgment on the ground that he was not a state actor. Id. at *3.

The district court framed its analysis by stating that "[t]he main focus of the inquiry is to determine whether 'the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law.'" Id. at *3 (quoting Groman v. Township of Manalapan, 47 F.3d 628, 639 n. 17 (3rd Cir. 1995)). Citing Jordan and Angelico II, the court reiterated that a private individual must actually utilize the compulsive powers of the state, rather than simply the threat of state action, before he can properly be viewed as a state actor. Id. at *5-6;

Jordan, 20 F.3d at 1264-66; Angelico II, 184 F.3d at 278.  Reviewing the undisputed evidence, the court concluded that neither the solicitor nor the investigator was a state actor:

> In the instant case, as in Jordan, there exists a clear distinction between the potential for state involvement and actual state involvement.  Clearly, there are legal consequences that accompany the failure to pay real estate taxes which might ultimately result in a private individual enlisting the compulsive powers of the state. However, as the Third Circuit has held, a distinct difference exists between resorting to an available state procedure and the actual use of state officials to enforce that procedure. See Jordan, 20 F.3d at 1267. At the time of the complained-of action, one letter had been sent to the O'Hanlons notifying them of their tax delinquency and no legal process had begun. Moreover, the undisputed facts indicate that Hackett did not employ the compulsive powers of the state with regards to the Meadow Lane property. Rather, he enlisted the aid of Gosnell, a private individual, to survey the property and obtain information to help Hackett determine whether and when to invoke state action.
>
> Gosnell, in turn, went to the Meadow Lane property alone, unaccompanied by a sheriff or city official. He did not brandish a badge or don a uniform that conveyed governmental authority, as he was a private individual acting on behalf of a private attorney. Nor did Gosnell enlist the compulsive powers of the state. He merely asked the tenants to volunteer the information he sought. If the tenants were uncooperative, as some were, Gosnell had no further recourse or means of compelling an answer.
>
> " '[A] private party is not converted into a state actor as long as the assistance of state officials remains merely a potential threat. It is only when, and if, such potential is realized that a private party may be converted into a state actor for purposes of satisfying the state action element of a § 1983 claim.' " Angelico, 184 F.3d at 278 (quoting Angelico v. Leigh Valley Hops., Inc., Civ. A. No. 2861, 1996 WL 524112, at *2 (E.D. Pa. Sept. 13, 1996)). Based on the uncontested facts concerning the events of November 1, 1998, the O'Hanlons have failed to demonstrate that Hackett is a state official, that he acted together with or obtained significant aid from state officials, or that his conduct is, by its nature, chargeable to the state.  Because the O'Hanlons have not demonstrated that Hackett was a state actor, the Court need not address the balance

10

> of the section 1983 analysis. Accordingly, the Court grants Defendant Hackett's Motion for Summary Judgment.

Id. at *6 (some internal citations omitted).

In the instant case, Plaintiff broadly alleges that Defendant was clothed in the authority of the state when he was asked by Millcreek Township to conduct an investigation into the Maynard letters and was given complete authority to act on behalf of the Township in conducting the investigation. However, Plaintiff's complaint contains no allegation that Defendant utilized the compulsive powers of the state to further his investigation, such as by employing police to secure evidence or invoking the authority of the township to force uncooperative witnesses to answer questions. See Angelico II, 184 F.3d at 278 ("Before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation, e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request."); Jordan, 20 F.3d at 1266-67 (attorney did not become a state actor until he actually utilized state force by ordering a sheriff to execute on a judgment). As in O'Hanlon, we conclude that the mere act of conducting an investigation on behalf of a governmental entity does not transform a solicitor into a state actor in the absence of actual use of state force to further the investigation. O'Hanlon, 2002 WL 393122, *6.

### B. Official Policy-Making

Plaintiff also alleges that Defendant must be considered a state actor because he exercised the type of official policy-making authority traditionally reserved to the state when he unilaterally made decisions concerning whether to present evidence to the School Board and who to target in the investigation. As noted above, courts have held

11

that a private attorney or solicitor may be considered a state actor if the attorney determines official government policies or makes final decisions concerning issues that are ordinarily reserved to the state.  For example, in <u>Frompovicz v. Township of South Manheim</u>, 2007 WL 2908292 (M.D. Pa. 2007), the plaintiff alleged, *inter alia*, that the township's solicitor exercised state authority by unilaterally developing "complex criteria for place a cellphone tower in the Township" which effectively discriminated against the plaintiff in favor of one of the solicitor's private clients.  <u>Id</u>. at *3.  Denying the solicitor's motion to dismiss, the court concluded that the allegation that the solicitor had unilaterally evaluated and established zoning standards on behalf of the township was sufficient to state a claim that the solicitor was a state actor:

> Establishing the criteria for permit applications and evaluating those applications are clearly activities that have their source in state authority.  [The solicitor], in establishing the standards by which to judge permit applications, would in all fairness be considered a state actor.  He carried out a duty mandated under local governmental authority, establishing standards that applied under local law.  [He] could therefore be considered a state actor.

<u>Id</u>. at *8.

In <u>Majer v. Township of Long Beach</u>, the plaintiff alleged that the township's solicitor had unilaterally rescinded a longstanding township policy allowing "Open House" signs to be placed on street corners.  <u>Majer</u>, 2009 WL 3208419 (D.N.J. 2009).  The court found that there were disputed issues of material fact concerning whether the township solicitor had unilaterally ordered that the signs be banned or had merely advised the township to ban the signs, but held that the solicitor could be liable as a state actor if the plaintiff could prove that the solicitor had "gone beyond making recommendations" and begun to "decide official government policies."  <u>Id</u>. at **8-9.

Plaintiff's complaint, however, fails to allege the type of official policy-making decisions at issue in <u>Frompovicz</u> or <u>Majer</u>, each of which involved a solicitor who unilaterally dictated state policy concerning core government functions such as land use and public expression. <u>Frompovicz</u>, 2007 WL 2908292 at *8; <u>Majer</u>, 2009 WL 3208419 at **8-9. Unlike a solicitor who creates and implements rules and standards governing zoning ordinances, property use, and free expression, a solicitor who controls the direction and scope of a township's internal investigation into a personnel matter cannot be said to have engaged in official policy-making. Rather, determining how to pursue an investigation and which factual findings to present to a school board are routine investigative decisions that have no basis in state authority. <u>See</u> <u>O'Hanlon</u>, 2002 WL 393122, *6 (conducting an investigation on behalf of a governmental entity does not transform a solicitor into a state actor).

In sum, Plaintiff has failed to allege sufficient facts to satisfy the state actor requirement of her § 1983 claim and Defendant's motion to dismiss will be granted.

In the event that Defendant's Motion to Dismiss is granted, Plaintiff has requested leave to amend to "add further detail to Defendant's role, which she has, in the interest of brevity, heretofore left out of the Amended Complaint." (Plaintiff's Brief in Opposition, p. 12). The Third Circuit has held that "when an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint . . .". <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3rd Cir. 2000) (quoting <u>Darr v. Wolfe</u>, 767 F.2d 79, 81 (3rd Cir. 1985)). However, leave to amend should not be

granted where it would be "inequitable or futile." Twillie v. Ohio, 2009 WL 2151373, *3 (W.D. Pa. 2009) (citing Shane, 213 F.3d at 116).

We conclude that, in the instant case, amendment would be futile for several reasons. First, Plaintiff has already had one opportunity to amend her complaint to cure the precise defects highlighted herein and failed to do so. As noted above, Defendant's first motion to dismiss raised an identical challenge to the adequacy of the pleading with respect to his status as a state actor. Despite being notified as to this potential deficiency in her pleading, Plaintiff failed to add *any* additional facts relevant to Defendant's status as a state actor in her responsive amendment.

Secondly, even if granted leave to amend, there is nothing to indicate that Plaintiff would be able to cure the deficiencies in her Amended Complaint. For example, Plaintiff suggests that she would supplement her complaint to assert that Maynard previously testified that "Perhacs himself was the impetus behind an investigation of Plaintiff and her daughter as part of the anonymous letters investigation and that 'Perhacs alone' was the person who suspected Plaintiff may have authored the letters." (Brief in Response, p. 12 n. 2). Even if accepted as true, these allegations simply have no logical bearing on whether or not Defendant was clothed in the authority of the state or engaged in official policy-making in the course of carrying out his investigation. As set forth in the caselaw above, routine decisions such as whom to target in an internal personnel investigation do not constitute official policy-making.

Finally, having dismissed each of Plaintiff's federal claims for the reasons stated above, we decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim based upon the Pennsylvania Whistleblower Act. "[P]endent jurisdiction is a

doctrine of discretion, not of plaintiff's right." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-27 (1966)). In general, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." Gibbs, 383 U.S. at 726 (acknowledging that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims"); Bright v. Westmoreland County, 380 F.3d 729, 751 (3rd Cir.2004) ("[A]bsent extraordinary circumstances, where the federal causes of action are dismissed the district court should 'ordinarily refrain from exercising pendent jurisdiction [over the state law claims].' ") (quoting Rolo v. City Investing Co. Liquidating Trust, 845 F.Supp. 182, 215 (D. N. J.1993)). We are aware of no extraordinary circumstances which would support the exercise of supplemental jurisdiction in this case.[2]

### III.   CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is granted. An appropriate order follows.

---

[2] We exercised supplemental jurisdiction over Plaintiff's Pennsylvania Whistleblower claim in granting the Defendants' summary judgment in Anderson v. Board of School Directors, et al., Civil Action 1:07-cv-111-SJM [Doc. No. 287]. That motion was decided, however, on a fully developed and massive record pursuant to Rule 56. In exercising supplemental jurisdiction, we relied in part on the "age of [the] case [and] its mature procedural posture… " Id. Those factors do not weigh in favor of exercising supplemental jurisdiction in the instant case.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARYANN ANDERSON,

       Plaintiff,

v.          C.A. No. 11-289 Erie
            District Judge McLaughlin

RICHARD PERHACS, in his individual and official capacity,

       Defendant.

## ORDER

AND NOW, this 29th day of March, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED. Plaintiff's § 1983 claim is dismissed with prejudice. Plaintiff's pendent state law claim based upon the Pennsylvania Whistleblower Act is dismissed without prejudice to its pursuit in state court.

Judgment is entered in favor of Defendant. This matter is closed.

IT IS SO ORDERED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. nk